UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20400-CR-RS

UNITED STATES OF AMERICA,
        Plaintiff,
vs.

PAVEL RUIZ,
        Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, PAVEL RAMON RUIZ ("Ruiz"), by and through his undersigned attorney, hereby files his Sentencing Memorandum before his upcoming sentencing hearing and states the following:

### OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT ("PSR")

The defendant has reviewed his presentence investigation report ("PSR"), which was disclosed (via D.E. 27) to the parties on June 22, 2023. He has no objections to the guideline calculations outlined in paragraphs 51 through 62 of the PSR. The guidelines calculated by the probation officer are consistent with the plea agreement, the stipulations of which are referenced in paragraph three of the PSR.

### Brief Procedural History

On April 26, 2023, Ruiz pled guilty to a one-count Information charging him with wire fraud conspiracy in violation of 18 U.S.C. § 1349. He is scheduled to be sentenced on September 7, 2023.

**Minor factual clarifications which have no impact on the advisory sentencing guidelines**:

As to the second sentence of **paragraph one**, the word "Indictment" should be replaced with "Information." The probation officer correctly references the word "Information" in the preceding sentence of that paragraph.

As to **paragraph 47,** there are some typographical mistakes as to the investment and payment amounts referenced in that an additional zero is lacking as to some of the amounts.

As to **paragraph 74**, the defendant left his native country, Honduras, and immigrated to the United States in approximately November 1998, not June 1988. (*The defendant's birth year was 1993, so it is impossible for him to have immigrated to this country in 1988*). **As to paragraph 77**, the defendant recalled he immigrated to the United States in November 1998, not 2000.

The words "as a cashier" in the first sentence of **paragraph 92** should be moved to the second sentence right after the words "(t)he defendant worked" to clarify he was not a cashier during his entire ten-year employment period at the dry cleaning business as implied in the first sentence. Nonetheless, the second sentence does state he was promoted to "office manager."

### Title 18 U.S.C. § 3553 Sentencing Factors

As the Court is well aware, the Federal Sentencing Guidelines are only **advisory**, and no longer mandatory. Although the guidelines continue to have significance, they are among several factors to be weighed by the Court in its determination of a punishment that is sufficient but not greater than necessary to satisfy the purposes and goals set forth in 18 U.S.C. § 3553(a), *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Under *Gall*, the advisory guideline range does not have "any particular weight." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc). The Court must conduct its own evaluation of the sentencing factors listed in 18 U.S.C. § 3553(a), and may "reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 552 U.S. at 113.

The purpose of the provision in § 3553(a) is to ensure the imposition of a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing established by Congress. This section of the statute directs courts to consider: (1) "the nature and circumstances of the offense," (2) "the history and characteristics of the defendant," (3) "the sentencing range established" by the guidelines; (4) "the need for the sentence imposed to reflect the seriousness of the offense, and to deter the criminal conduct," (5) "the need to avoid unwarranted sentence disparities among defendants"; and (6) the "need to provide restitution to any victim(s) of the offense."

## Nature and Circumstances of the Offense

Although the defendant admittedly engaged in the wire fraud conspiracy while working for and being directed by unindicted co-conspirator, Johanna Garcia, he was not the mastermind of the fraud. Garcia, who set up this investment fraud scheme and gave direction to Ruiz, remains an unindicted co-conspirator and has yet to be even charged, despite her aggravating role in the conspiracy.

MJ Capital Funding LLC (MJ Capital) was a Florida limited liability company (LLC) with its listed place of business in Pompano Beach, Florida. MJ Taxes and More, Inc. (MJ Taxes and More) was a Florida profit corporation with its listed place of business in Coral Gables, Florida, and was founded in 2019. Johanna Garcia (Garcia) founded MJ Capital in June 2020, prior to Ruiz's involvement. As noted in paragraph 21 of the PSR, Ruiz did not join the already established conspiracy until March 2021. As noted in paragraph 22, **under Garcia's management, the MJ Companies** (*which include the two aforementioned companies opened by Garcia in addition to Pavel Ruiz MJCF*) **solicited investments** from the public offering investment contracts. Garcia taught and directed Ruiz how to pitch investment opportunities to potential clients.

Prior to Ruiz's participation in the wire fraud, Garcia had prepared Ruiz and his family's income tax returns for years and was trusted by them. The defendant used poor judgment in allowing himself to become involved in criminal activity for the first time - being tempted and

lured into this activity by easy money, which allowed him to acquire material possessions more quickly. The price he is paying now is expensive as he not only faces a recommended guideline imprisonment sentence of 78 to 97 months but possible removal from the United States, as he is a non-citizen. Meanwhile, the true leader of this conspiracy mysteriously remains free and without facing incarceration; however, a civil case was brought against her by the U.S. Securities and Exchange Commission, so she does face possible monetary sanctions.

### Personal Characteristics of the Defendant

*The Defendant has no prior arrests and meets all but one of the criteria of the forthcoming guideline amendment, § 4C1.1*:

As confirmed in paragraph 65 of Ruiz's PSR, **Ruiz has no prior arrests and zero convictions**. As a result, he has no criminal history points under the guidelines and has been assigned the **lowest possible criminal history category of I**. Consequently, his sentencing guideline imprisonment range has not been increased based on any criminal history since he falls within the lowest criminal history category of I. The United States Sentencing Commission has promulgated an amendment to Chapter 4 of the Guidelines to address "**zero-point offenders**" like the defendant and to further award them if several other mitigating circumstances exist. The amendment will become effective as of November 1, 2023, only months away from this defendant's sentencing hearing.

In the newly added **§ 4C1.1** of the guidelines, offenders who meet all of ten criteria listed are eligible to receive a two-level decrease in their offense level under Chapters Two and Three. Mr. Ruiz meets nine of the ten criteria created and listed by the commission for the reduction to apply under § 4C1.1. The nine criteria he has met are as follows: He has zero criminal history points; there is no terrorism enhancement applicable in this case; there were no violence or credible threats of violence; no death or serious bodily injury took place as a result of the offense in which the defendant was involved; this was not a sex offense; no firearm or dangerous weapon were involved in this case; the offense is not covered by § 2H1.1; there was no hate crime; there was no vulnerable victim or serious human rights offense; he did not receive

an aggravating role adjustment; and this did not involve a continuing criminal enterprise. The only criterion with **which he does not comply is he did help cause a substantial financial hardship**, which is accounted for by his two-level increase in his offense level pursuant to § 2B1.1(b)(2)(A)(i).

Mr. Ruiz would otherwise be eligible for this **two-level reduction** in his offense level under § 4C1.1 of the guidelines if he also met the one aforementioned criterion, and his sentencing hearing were to take place a few months from now, on or after November 1st of this year. A variance based on the forthcoming amendment, for defendants with zero criminal history points and who met the criteria set forth in § 4C1.1, has been granted by sentencing judges in the Southern District of Florida. Mr. Ruiz is aware the amendment is not yet effective, and of the one criterion which renders him ineligible for this offense level reduction. However, his compliance with nine of the ten conditions or criteria should be given some weight. Based on the above factors, the defendant respectfully suggests the Court grant him a **one-level decrease** (*versus the standard or suggested two-level adjustment*) from his offense level i**n the form of a downward variance**. If the Court were inclined to do so, the defendant's **starting point** for sentencing guideline purposes, **prior to any additional variances** based on other factors set forth in this sentencing memorandum, would be lowered to **70 to 87 months** (based on a total offense level of 27).

**The defendant is Among the Group of Offenders Less Likely to Recidivate**

As referenced above, Ruiz is free of any prior arrests or convictions, placing him not only in criminal history category I, but making him a true first offender with no previous contact with the criminal justice system and zero criminal history points. As such, he is among the offenders with the lowest risk to re-offend. While Ruiz benefits from his lack of criminal history, offenders within category I can be distinguished from each other, giving them varying rates of recidivism as follows: group (a) offenders are those with no prior arrests; group (b) offenders are those with prior arrests, but no prior convictions; group (c) offenders have prior convictions that are to never count towards criminal history points, and group (d) offenders have one criminal history point based on a prior sentence of supervision or incarceration for less than 60 days versus zero criminal

history points. [See U.S. Sentencing Commission, Recidivism and the First Offender, May 2004; and, more recently, Criminal History and Recidivism of Federal Offenders, March 2017.]

**Ruiz falls within group (a), the lowest category for offenders. Among these groups the lowest recidivism rate is for group (a), with a rate of 6.8 percent.** Group (b) has a recidivism rate of 17.2 percent. Group (c) has a recidivism rate of 8.8 percent. From both culpability and recidivism risk perspectives, **group (a) offenders** with no prior arrests **most strongly meet the conceptual definition of the first offender category**. Offenders in group (a) have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate of 6.8 percent, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to reoffend.

**Defendant's Volunteer Work and Dedication to Youth Empowerment Group in High Risk/Inner-City Neighborhood (Liberty City)**

For the past two and a half years, the defendant has been a consistent and loyal volunteer at the **Mighty Warriorz Kids Academy**, based in the Liberty City neighborhood of Miami. The academy is located within The Ark of the City, which was founded to improve and transform the lives of youths within the Miami Dade County community. Mighty Warriorz Kids Academy provides donations to The Ark of the City, which in exchange, allows the academy to use its facilities, which include a gym, basketball courts, etc.



By way of information, The Ark of the City is a non-profit organization that was formed in 2007 by Terry Elliott, Sr., a humanitarian, philanthropist and businessman, and his author wife, Sherria Elliott. Their goal has been to give back to inner-city, underprivileged children and the community at large. The organization provides community service and educational programs, aside from spreading cultural awareness within the Liberty City community of Miami. {See https://www.arkofthecity.com/ and  https://www.facebook.com/arkofthecityincorporated/}.

Ruiz's volunteer efforts at the academy began as far back as January 2021. While working at the warehouse and preparing to give donations to his native country, Honduras, which had suffered natural disasters in 2000, he met Hauley Tillman, known as "Champ." Mr. Tillman, a sensei/martial arts instructor, passionately shared with Ruiz details about the

children's program (the Mighty Warriorz Kids Academy) which he led. As the defendant has much younger half siblings, he identified with Champ and his passion for helping and guiding youth. The defendant began to volunteer and assist "Champ." What started out as teaching kids martial arts in Mr. Tillman's backyard became a much larger program with the assistance and support of The Ark of the City.

The defendant's invaluable presence and assistance at the academy takes place on Tuesday, Wednesday, and Thursday evenings, during which he dedicates two to three hours of his time on each of those days:



- On a weekly basis, specifically on Tuesday and Thursdays, the defendant assists teenagers participating in the academy's self-confidence group with developing their leadership skills;
- On Tuesdays at 6 p.m., he participates as a crew leader for outdoor cleanup events;

- Also on Thursdays, he assists with meals by purchasing, preparing and/or serving food at the academy;
- Ruiz picks up the gym mats used by students and instructors at the martial arts academy;
- He cleans up the boys' bathroom;
- Ruiz acts as a chaperon for field trips the students take twice per month;
- He assists with a group that focuses on children diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and autism.

The children and teenagers at the academy affectionately refer to the defendant as "Pavy," and have thanked him for his dedication.



The defendant's volunteer efforts have given him a sense of purpose. He describes his connection with the Mighty Warriorz as a calling from God. His enthusiastic efforts are demonstrative of an individual who truly wants to better the community and guide local youngsters who eventually pave the future.

A character letter has been forwarded to the Court by Hauley Tillman, age 34, the head instructor and founder of the Mighty Warriorz Kids Academy. Mr. Tillman, who is known by his students and many in the martial arts community as "Champ," holds a black belt in karate, Kung Fu, judo and jiu jitsu. Mr. Tillman has his own personal success story that is extremely inspirational. He recalled he had a troubled childhood, was raised in the projects of the Liberty City of Miami, became homeless, and ended up in a homeless shelter. A local police lieutenant, Steven Tarago, who was a master of all types of styles of martial arts, took Mr. Tillman under his wing and inspired him to learn and master martial arts at his own school, where the defendant began living. After getting on the right track and becoming a very skilled, talented and successful fighter, Mr. Tillman eventually formed his own academy, which started as a grassroots organization.

Approximately three years ago, Mr. Tillman met Ruiz, whom he refers to as "Pavy." Mr. Tillman was performing a day labor job at a warehouse, where Pavy was organizing pampers, dried food and other items he was giving away and sending to his native Honduras after the occurrence of a natural disaster. Mr. Tillman and Ruiz struck up a conversation, and Mr. Ruiz instantly became inspired by Mr. Tillman's involvement in helping troubled and poor youth in the community. The defendant took advantage of his connections which led to Mr. Tillman moving his academy from the front or back yard of his property to a well-equipped building. Ruiz connected with the "Grand Master," Terry Elliott, who owns the biggest martial arts school in South Florida. Mr. Elliott provided Mr. Tillman with a much larger space where he can reach more youth and help shape their future in a very positive manner. Mr. Tillman notes the minor students who are members of his academy are from broken homes, victims of child abuse and some of them suffer from autism. He notes these children are removed from the streets and participating in activities that benefit their physical and mental welfare.

According to Champ, Pavy contributes to the academy in a variety of ways. He sends the kids to the youth fair, buys them bookbags, donates money for every tournament, sweeps and cleans the facilities, cuts the yards, and is loved by all the students. The defendant, whom Mr. Tillman describes as a "great motivational speaker," reads books to the children and teaches them

many different types of life skills.  He educates the students about good hygiene habits, is active in classroom settings, and even provides them with entrepreneurial skills and teaches them how to open up a bank account in his or her name.   For the past few years, the defendant volunteers at the center at least twice weekly, on Tuesdays and Thursdays, and often three times weekly to include Wednesday evenings.   The defendant derives great joy and satisfaction from his volunteer work at the academy, which will be obtaining grants and loans to continue running and growing.

### Ruiz's Employment History Prior to and After the Instant Offense

The defendant's employment history prior to and even after involvement with Ms. Garcia and the wire fraud offense are indicative of a hardworking individual without any pattern of criminal activity.  As noted in paragraph 92, from 2011 until about 2021, he worked at his family's dry cleaning business.  He initially worked as a cashier, while still a teenager, but he was later promoted to general manager of eight of Boca's Premier and Personal Touch Dry Cleaners' in South Florida. He earned about $3,200 monthly from this employment.   Since 2022, Ruiz has been a sales representative and janitor at Vape N Goodies Wholesale, a wholesale distributor of tobacco, nicotine & general merchandise located in Fort Lauderdale, Florida.   His income from Vape N Goodies is about $2,000 per month.   To supplement his income, Ruiz also washes cars a few times per week for Razzle Dazzle Mobile Detailing, a mobile car wash company located in Pompano Beach, Florida.   He earns a couple or a few hundred dollars more per week, or from $800 to $1,200 per month, from detailing automobiles.   During the last 12 years, about 11 of them have involved legitimate employment ventures.

### Ruiz, a non-citizen, already faces a harsh sanction: Deportation

Ruiz has spent most of his life in the United States.  However, as a Honduran immigrant he is a non-citizen who faces severe immigration consequences as a result of his federal, felony fraud conviction.  The defendant, age 30, was born in Honduras, Central America, in 1993.  Since late-1998, he has resided in the United States.  As such, he has lived in the United States for more than 25 years, since he was a child.  Facing deportation, being detained in an immigration facility and being subject to an extended period of incarceration than that of a U.S. citizen make his situation and punishment more severe.  Being a non-citizen makes him ineligible for early release

programs as well as drug treatment programs. Those who undergo drug treatment in prison may be entitled to up to one year of early release for successful completion.

The defendant is in a uniquely unfavorable position as he has not lived in Honduras since childhood. Consequently, he would not know how to fend for himself once deported. His parents and most siblings reside in the United States, Florida, and Louisiana. He has some younger half-siblings who reside in Honduras but he has never met any of them. His removal to Honduras will bring about devastating employment and financial consequences for him, in addition to a mental and emotional impact. The defendant has maintained consistent employment throughout adulthood; however, employment opportunities in his native country are scarce. One Honduran Lempira (that country's currency) equals only 0.041 U.S. Dollars (USD). The average monthly salary in Honduras is about one-fourth of the average monthly salary in the United States. Honduras remains one of the poorest and unequal countries in Central America and has a high crime rate. Ruiz has no idea how he will support himself or what his life will be like if he is deported due to his federal conviction.

If removed, Ruiz will be separated from his family, most of which has settled in the United States. Therefore, Ruiz is not asking for a downward variance based only on his likelihood of de, but rather all the collateral consequences he faces, including that he has lived most of his life (and all of his adolescence and adulthood) in the United States, which he considers to be his home. The defendant hopes the Court takes into account that he faces a rough and cruel road ahead of him after he serves his term of imprisonment for the instant federal wire fraud offense.

## **CONCLUSION**

In summary, while the defendant acknowledges the very serious crime he committed and the victims who were misled and suffered losses while he exercised extremely poor judgment and engaged in inexcusable behavior for a period of time, all the aforementioned mitigating factors, especially his unparalleled volunteer and community work, collectively outweigh the aggravating factors and merit serious consideration by the Court.

**WHEREFORE**, the Defendant, PAVEL RUIZ, respectfully requests this Court grant these motions for a downward variance from the advisory guideline range and kindly consider a sentencing variance based on the abovementioned factors in this sentencing memorandum.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and the foregoing was furnished to: **Eric Morales, AUSA,** on this 23rd day of August 2023.

Respectfully submitted,

By: *s/ Michael Mirer*
    MICHAEL MIRER, ESQ.
    Florida Bar No.  0119490
    Attorney for the Defendant
    100 Biscayne Blvd, Suite 1300
    Miami, Florida 33130
    Tel.: 305-536-6177
    Fax: 305-536-6179
    Michael@mirerlaw.com