## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CR-20400-SMITH

UNITED STATES OF AMERICA

vs.

PAVEL RAMON RUIZ HERNANDEZ,
    a/k/a "Pavel Ruiz,"

    Defendant.

_____/

### SECOND PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon motion of the United States of America (the "United States") for entry of a Second Preliminary Order of Forfeiture ("Motion") against Defendant Pavel Ramon Ruiz Hernandez a/k/a Pavel Ruiz (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On October 29, 2022, the Defendant was charged by Information with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Information, ECF No. 1. The Information also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1349, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation pursuant to 18 U.S.C. § 981(a)(1)(C). *Id*. at 7. The forfeiture allegations also included property subject to forfeiture, including:

- All funds on deposit in Citibank account number 3290405412, held in the name of Pavel Ruiz MJCF LLC, or seized from this account on or about September 2, 2021;

("Subject Asset"). *Id*. at 7-8.

On April 26, 2023, the Court accepted the Defendant's guilty plea to the sole Count in the Information.  *See* Minute Entry, ECF No. 23; Plea Agreement ¶ 1, ECF No. 24.  As part of the guilty plea, the Defendant agreed to the forfeiture of the Subject Asset.  Plea Agreement, ¶ 14(b)(iv).  In support of the guilty plea, the Defendant agreed to a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction.  *See* Plea Agreement ¶ 9, ECF No. 24.  The Factual Proffer also provided a basis for the forfeiture of the Subject Asset. *See id.*

On August 15, 2023, this Court issued a preliminary order of forfeiture to forfeit other directly traceable assets and enter a forfeiture money judgment.  Order, ECF No. 37.

From at least June 2020, Co-conspirator 1 operated an investment Ponzi scheme through MJ Taxes and More, Inc. and MJ Capital Funding LLC (hereinafter "the MJ Companies"), which scheme utilized interstate wire communications, including emails and electronic bank transfers. Plea Agreement at 5 (¶9), ECF No 24.  At least as early as March 2021, Defendant joined Co-conspirator 1 in a conspiracy to commit wire fraud.  *Id*.

Under Co-conspirator 1's management, the MJ Companies solicited investments from the public by offering investment contracts representing that the investor's money would be used to fund small business loans called Merchant Cash Advances ("MCAs").  *Id*.  The MJ Companies' investment contracts included these representations: (1) guaranteed returns, typically 10% per month; and (2) guaranteed repayment of investment principal.  *Id*.

Defendant learned of the MJ Companies' purported investment opportunity through his acquaintance with Co-conspirator 1.  *Id*.  After conversations with Co-conspirator 1 about investing in MCAs, Defendant entered into an investment contract with the MJ Companies.  *Id*. Thereafter, Defendant became involved in soliciting new investors for the MJ Companies in

exchange for the payment of commissions. *Id*. Defendant became one of the "Directors" in the MJ Companies' hierarchy, which entailed overseeing a group of Managers and Account Representatives who solicited investors and raised funds in exchange for commissions. *Id*. at 5-6.

The MJ Companies encouraged existing investors to refer other investors by offering to pay commission for referrals. *Id*. at 6. The MJ Companies also allowed investors to become affiliated as "Account Representatives" to raise new investment funds in exchange for commission-based compensation, typically 10% per month on the amount of funds raised. *Id*. The most productive account representatives were promoted to "Managers." *Id*.

Investors were solicited in several ways, including via affiliated Account Representatives, social media, and the MJ Companies' website. *Id*. Whatever the form of the solicitation, the message was the same: the MJ Companies would use the investor's money to fund MCAs that paid a high rate of return, and the investor would receive periodic payments paid from a share of the returns generated by MCAs. *Id*.

Defendant, Co-conspirator 1, and others represented to investors, directly and through the solicitation methods described above, that the MJ Companies' generated revenue from the MCA loans to pay the commissions and returns to investors. *Id*. It was represented to investors that the MJ Companies specialized in MCA funding for businesses, that there was a team of underwriters that vetted merchant loan applicants, and that defaults were negligible so that the MJ Companies could guarantee investor's capital. *Id*.

The representations that the MJ Companies were using investor money to fund MCAs, that MCAs generated revenue from which investor returns were paid, and that investor money was secure were lies. *Id*. In fact, the MJ Companies earned little revenue from MCAs and, with rare exceptions, the MJ Companies did not use investor funds to make MCA loans. *Id*. Therefore, the

MJ Companies' ability to pay investors the promised returns and repayment of principal depended on their ability to continue to raise new investor money, use the new funds raised to pay existing investment contracts and commissions, and convince existing investors to roll over their investments into a new investment agreement, thus deferring the MJ Companies' obligation to repay investors' back their principal. *Id.*

By at least as early as March 2021, Defendant was aware that the MJ Companies' representations about its investment offerings were lies, and that Co-conspirator 1 was operating a fraud scheme at the MJ Companies. *Id.* Defendant willfully joined in a conspiracy with Co-conspirator 1 in order to continue making money for himself. *Id.* On or about March 4, 2021, Defendant established Pavel Ruiz MJCF LLC, a Florida limited liability company, in order to facilitate the receipt and handling of fraudulently obtained investors proceeds. *Id.*

Defendant helped keep the Ponzi scheme going by continuing to raise new capital from investors, overseeing the solicitation activities of Managers and Account Representatives in his group, accepting and collecting large cash investments, and promoting the false representations of the MJ Companies as an investment vehicle to investors and to Account Representatives. *Id.* at 6-7.

Defendant fraudulently obtained, directly and indirectly through others, at least approximately $42,942,000 in proceeds from investors during his involvement in the conspiracy, thereby causing more than $25 million in losses to investors. *Id.* at 7. As part of this illicit activity, Defendant deposited or caused to be deposited fraudulently obtained investor proceeds in several accounts, including following account:

| **Institution** | **Account Number** | **Account Name** |
|---|---|---|
| Citibank | 3290405412 | Pavel Ruiz MJCF LLC |

Defendant, who had access to the MJ Companies' bank accounts, also arranged for the payments of returns to investors and commissions to those raising funds, including via cash payments. *Id*. at 7. For this, Defendant was paid large commissions by the MJ Companies, and kept and used investor funds to pay for travel, luxury goods, and social outings while promoting the MJ Companies' lifestyle. *Id*. at 7.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is GRANTED, and it is hereby ORDERED that:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C), the following specific property is hereby forfeited and vested in the United States of America:

       i.   All funds on deposit in Citibank account number 3290405412, held in the name of Pavel Ruiz MJCF LLC, or seized from this account on or about September 2, 2021.

2.      Any duly authorized law enforcement agency may seize and take possession of the forfeited property according to law.

3.      The United States shall send and publish notice of the forfeiture in accordance with Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n).

4.      The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

5.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

6.      The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend

this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

It is further **ORDERED** that upon adjudication of all third-party interests, if any, the Court will enter a final order of forfeiture as to the property in which all interests will be addressed. Upon notice from the United States that no claims have been filed within 60 days of the first day of publication or within 30 days of receipt of notice, whichever is earlier, then, pursuant to Rule 32.2(c)(2) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(7), this Order shall become a Final Order of Forfeiture and any duly authorized law enforcement agency shall dispose of the property in accordance with applicable law.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 20th day of September 2023.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE